IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CATARINO SANDOVAL, | § | |
| TDCJ-CID NO.11496128, | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-09-3636 |
| | § | |
| PHILLIP O. BICKHAM, *et al.*, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM AND ORDER ON DISMISSAL

Plaintiff, state inmate Catarino Sandoval proceeding *pro se* and *in forma pauperis*, has filed an amended complaint (Docket Entry No.18) and a more definite statement of his claims (Docket Entry No.19), in which he alleges violations of his civil rights under 42 U.S.C. § 1983. Pending are defendants' and plaintiff's motions for summary judgment (Docket Entry No.53, No.66), and their respective responses. (Docket Entries No.72, No.75).

For the reasons to follow, the Court will grant defendants' motion for summary judgment, deny plaintiff's summary judgment motion, and dismiss all claims against all defendants.

I. BACKGROUND

Plaintiff is serving a sixteen year sentence in the Texas Department of Criminal Justice-Criminal Institutions Division pursuant to a conviction in 2007 for an aggravated robbery in McLennan County, Texas. TDCJ website.[1] Plaintiff alleges the following facts, which he claims gave rise to the pending complaint:

---

1 http://168.51.178.33/webapp/TDCJ/InmateDetails.jsp?sidnumber=05558511

On July 9, 2009, a faulty circuit-breaker caused a power outage in the area where plaintiff was housed. (Docket Entry No.19, page 2). Correctional Officer Whitney Barber, however, told plaintiff and other inmates that she turned off the electrical power and that she would turn it on when she was ready. (Docket Entry No.18, page 3). The day was hot and Barber cursed the inmates and laughed at them. (Docket Entry No.19, page 2). As plaintiff placed his food tray into the food slot to return it to the officers, he told Officers Justin J. Avalos and Barber that he would like to talk to a supervisor or ranking officer. (Id.). Plaintiff wanted the electrical power restored and wanted to report Barber's misconduct. (Docket Entry No.18, page 3). The officers ignored plaintiff's request. (Id.). Plaintiff tried to attract the officers' attention by holding onto the food tray. (Docket Entry No.19, page 2). He was not violent or aggressive; nevertheless, Officer Barber told Officer Avalos to spray plaintiff with a chemical agent. (Id.). Avalos pulled a small canister from his holster and sprayed plaintiff's face and upper body, both front and back. (Id.). Plaintiff experienced an extreme burning sensation where the agent hit his body. (Docket Entry No.18, page 3).

Sgt. David Turrubiate, who was the supervisor on duty at the time, ordered plaintiff to strip and submit to a body search, which was captured on the video-recording for the use-of-force report. (Docket Entry No.18, page 4). Plaintiff complied; he was cuffed and removed from his cell. (Id.). Plaintiff told Turrubiate that

he was not violent and did not deserve to be subjected to chemical agents. (Id.). Turrubiate escorted plaintiff to the disciplinary block and placed him in a cell without allowing plaintiff the opportunity to decontaminate. (Id.). Turrubiate did not give plaintiff the proper paperwork to be completed after a use-of-force incident, including the use-of-force statement, medical statement, and witness statement. (Id.). Plaintiff's eyes and upper body burned for four to five days; his adrenalin levels were elevated and he felt like he was having a heart attack. (Docket Entry No.19, page 6). He did not receive any medical attention but was instructed to rinse the chemicals off his body. (Id.).

Officers Avalos and Barber charged plaintiff with the disciplinary violation of assaulting an officer. (Docket Entry No.19, page 3). Plaintiff was found guilty of the violation; punishment was assessed at loss of class status, cell restriction, and forfeiture of good time credit. Plaintiff grieved the use of force and the disciplinary conviction without success. (Docket Entry No.1, pages 8-11).

Plaintiff complains that Ferguson Unit administrators, i.e., Senior Warden Phillip O. Bickham, Assistant Warden Rocky N. Moore, Major Larry G. Doyle, and Captain Virgil G. McMullin, did not correct Sgt. Turrubiate's failure to provide plaintiff with the proper documentation, which was necessary for officials to conduct a fair investigation of the use-of-force incident. (Docket Entry No.18, pages 4-5). He also complains that they acted in concert with Officers Barber and Avalos because they did not provide proper

remedies and procedures to prevent the use of force "in a malicious and sadistic form."   (Id., page 5).

Plaintiff seeks declaratory relief and compensatory, punitive, and nominal damages on claims that he was subjected to excessive force in violation of the Eighth Amendment's prohibition against cruel and unusual punishment and he was deprived of a liberty interest under the Due Process Clause of the Fourteenth Amendment. (Docket Entry No.18, page 6).

Defendants move for summary judgment on the ground that plaintiff's excessive force claim is barred by the holding of Heck v. Humphrey, 512 U.S. 477, 486-87 (1994); they also assert the affirmative defenses of Eleventh Amendment immunity, qualified immunity, and official immunity.   (Docket Entry No.53).

Plaintiff moves for summary judgment on grounds that defendants are not entitled to qualified and official immunity or to Eleventh Amendment immunity.   (Docket Entry No.66).   He also moves for summary judgment on the ground that his constitutional rights were violated.   (Id.).

## II. SUMMARY JUDGMENT

To be entitled to summary judgment, the pleadings and summary judgment evidence must show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.   FED. R. CIV. P. 56(c).   The moving party bears the burden of initially pointing out to the court the basis of the motion and identifying the portions of the record demonstrating the

absence of a genuine issue for trial.  <u>Duckett v. City of Cedar Park, Tex.</u>, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact."  <u>Hamilton v. Seque Software, Inc.</u>, 232 F.3d 473, 477 (5th Cir. 2000) (quoting <u>Conkling v. Turner</u>, 18 F.3d 1285, 1295 (5th Cir. 1994)).  The Court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant.  <u>U.S. v. Houston Pipeline Co.</u>, 37 F.3d 224, 227 (5th Cir. 1994).

<u>A. Eleventh Amendment Immunity</u>

Defendants assert Eleventh Amendment Immunity for monetary damages against them in their official capacities as employees of a state agency.  (Docket Entry No.53).

Suits for damages against the state are barred by the Eleventh Amendment.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985).  Under the Eleventh Amendment, an unconsenting state is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.  <u>Edelman v. Jordan</u>, 415 U.S. 651, 663 (1974).  Absent waiver, neither a state nor agencies acting under its control are subject to suit in federal court.  <u>Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 144 (1993).  This bar remains in effect when state officials are sued for damages in their official capacity.  <u>Cory v. White</u>, 457 U.S. 85, 89 (1982).  To the extent plaintiff sues defendants for

monetary damages in their official capacities, as employees of TDCJ-CID, plaintiff's claims are barred by the Eleventh Amendment.

### B. Due Process

### 1.Disciplinary Conviction

Plaintiff complains that Officers Barber and Avalos made a false allegation that he assaulted Avalos to justify Avalos's use of the chemical agent, and they gave false testimony of the same at the disciplinary proceedings.  (Docket Entry No.18, pages 4-5). Plaintiff further claims that he was denied documentary evidence and live witnesses at the disciplinary hearing.  (Docket Entries No.18, page 5, No.66, page 12).  He moves for summary judgment on the ground that he has a liberty interest in his classification, *i.e.*, a two-year confinement to administrative segregation, and his eligibility for parole.  In addition to monetary damages and declaratory relief, plaintiff seeks to have the disciplinary case expunged.  (Docket Entries No.18; No.66, page 6).

Defendants move for summary judgment on plaintiff's due process claims; they contend that plaintiff's challenge to his disciplinary conviction and his Eighth Amendment excessive force claim, as it relates to the disciplinary conviction, are barred by the favorable termination requirement in Heck v. Humphrey, 512 U.S. 477 (1994).  (Docket Entry No.53).  Plaintiff disagrees.  (Docket Entry No.66).

The favorable determination requirement in Heck provides that to recover damages or injunctive relief for an allegedly

"unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus [under] 28 U.S.C. § 2254." Id. at 486-87. A conviction for purpose of Heck includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good time credits. Edwards v. Balisok 520 U.S. 641, 648 (1997).

Although plaintiff states otherwise, he did not forfeit any good-time credit that might affect the duration of his sentence. (Docket Entries No.53-3, page 3; No. 66-1, page 24). Heck's favorable termination requirement, therefore, does not bar plaintiff's claim for damages or declaratory relief with respect to the disciplinary conviction and excessive force in this § 1983 suit.

Plaintiff, nevertheless, has no liberty interest that would implicate due process in this disciplinary proceeding. See Hudson v. Johnson, 242 F.3d 534, 535-36 (5th Cir. 2001) (recognizing that prisoners charged with rule infractions are entitled to certain due process rights under the Fourteenth Amendment when disciplinary action may result in a sanction that impinges upon a liberty interest); Sandin v. Conner, 515 U.S. 472, 484 (1995) (holding a constitutionally protected liberty interest is "limited to freedom

from restraint which . . . imposes atypical and significant
hardships on the inmate in relation to the ordinary incidents of
prison life"). In Texas, only sanctions that result in the loss of
good time credits for inmates who are eligible for release on
mandatory supervision or that otherwise directly and adversely
affect release on mandatory supervision will impose upon a liberty
interest. Malchi v. Thaler, 211 F.3d 953, 957-58 (5th Cir. 2000);
Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997); Orellana v.
Kyle, 65 F.3d 29, 31-33 (5th Cir. 1995). The punishment assessed
in plaintiff's disciplinary case, *i.e.*, fifteen days cell
restriction and placement at classification status Line 3 (Docket
Entries No.53-3, page 3; No. 66-1, page 24), does not impinge upon
a liberty interest and therefore, does not implicate the Due
Process Clause. *See* Malchi, 211 F.3d at 959 (right to particular
time-earning status); Madison, 104 F.3d at 768 (loss of commissary
privileges and cell restriction); Luken v. Scott, 71 F.3d 192, 193
(5th Cir. 1996) (loss of opportunity to earn good time credits).
Moreover, plaintiff, like other Texas prisoners has no protected
liberty interest in early release on parole. *See* Creel v. Keene,
928 F.2d 707, 712 (5th Cir. 1991). Without a liberty interest
implicating due process, plaintiff's requests for declaratory
relief, compensatory and punitive damages, and expunction of the
disciplinary case are without legal merit.

Furthermore, the record, viewed in the light most favorable to
plaintiff, does not support an award of nominal damages for a
violation of procedural due process. *See* Mahogany v. Stadler, 242

Fed. Appx. 261 (5th Cir. 2007) (not designated for publication)
(finding that an inmate may seek nominal damages under § 1983 for
the denial of procedural due process rights during disciplinary
hearings, even if he did not forfeit good time credit).
Plaintiff's disciplinary record does not show that he was denied
documentary evidence or live witnesses at the disciplinary hearing.
The record shows that plaintiff gave a statement and presented the
written statements of two inmate witnesses; he also questioned
Officer Barber who was present at the hearing. (Docket Entry
No.66-1, pages 17-22). He did not request other documentary
evidence. (Id., page 16). The record does not show that plaintiff
requested to call witnesses to testify at the hearing; nor does
plaintiff state what evidence the witnesses could have provided or
how such information would have helped his defense. Therefore,
even if he were denied the right to call witnesses at the
disciplinary hearing, he fails to demonstrate that he was
prejudiced. See Black v. Warren, 134 F.3d 732, 734 (5th Cir.
1998).

Likewise, the record viewed in plaintiff's favor, does not
support his claim that he was falsely accused of assault and
convicted upon false evidence. Due process requires that
disciplinary sanctions, which deprive an inmate of a liberty
interest in good-time credits and imposed by prison officials in
disciplinary proceedings, must be supported by "some evidence."
Superintendent, Massachusetts Correctional Institution v. Hill, 472
U.S. 445, 455, 457 (1983). "Ascertaining whether this standard is

satisfied does not require an examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56. The record of Officer Barber's statements at the hearing and Officer Avalos's Offense Report (Docket Entries No.53-3, page 3; No.66-1, pages 22-23) constitute "some evidence" in support plaintiff's disciplinary conviction. Hudson, 242 F.3d at 537).

Defendants, therefore, are entitled to summary judgment on plaintiff's due process claims with respect to his disciplinary conviction.

## 2. Use-of-Force Investigation

Plaintiff also complains that Sgt. Turrubiate failed to conduct a proper and adequate investigation of the use-of-force incident and failed to provide him with proper forms to facilitate such investigation.[2] (Docket Entries No.18, page 4; No.66, page 12). TDCJ-CID has an established practice of documenting any incident where force is used against a prisoner. *See, e.g.*, Gomez v. Chandler, 163 F.3d 921, 922 (5th Cir. 1999). Regulations primarily designed to guide correctional officials in the administration of a prison are not designed to confer rights on inmates. Sandin, 515 U.S. at 481-82. The mere failure of prison

---

2 Turrubiate reported that he offered plaintiff "an offender participation statement." (Docket Entry No.66-1, page 9). Plaintiff grieved that Sgt. Turrubiate advised him of his right to submit a statement and he promised to bring one to plaintiff but he never did. (Docket Entry No.1, page 9).

officials to follow prison rules and regulations does not, without more, give rise to a constitutional violation. <u>Myers v. Klevenhagen</u>, 97 F.3d 91, 94 (5th Cir. 1996).   Plaintiff cites no authority and the Court has found none, which holds that an inmate has a protected liberty interest in the prison's internal investigative procedures. *See* <u>Geiger v. Jowers</u>, 404 F.3d 371, 343-374 (5th Cir. 2005) (holding that an inmate has no protected liberty interest in grievance procedures).   Moreover, plaintiff's summary judgment record reflects an extensive investigation of the use-of-force incident.   (Docket Entry No.66-1, pages 2-27).

Plaintiff's due process claim regarding the use-of-force investigation is without merit; therefore, defendants are entitled to summary judgment on this claim.

## C. Respondeat Superior

Plaintiff alleges that TDCJ-CID supervisors Phillip Bickham, L.G. Doyle, Rocky Moore, Virgil McMullin did not correct Sgt. Turrubiate for his failure to investigate the use-of-force incident and his failure to provide plaintiff with the required forms to document the incident.   (Docket Entries No.18, page 4, No.66, page 4).   Plaintiff also alleges that these defendants acted in concert with Officers Barber and Avalos because they did not provide proper remedies and procedures to prevent the use of force.   (Docket Entry No.18, page 5).   Defendants contend that plaintiff's claims are not actionable under § 1983.   (Docket Entry No.53).

A civil rights plaintiff must establish a causal connection

between the acts or omissions of the defendant and the resultant constitutional deprivation.  Reimer v. Smith, 663 F.2d 1316, 1323 (5th Cir. 1981).  This may be done by alleging either active participation by the defendant in the actions causing the deprivation of the plaintiff's constitutional rights or affirmative adoption by the defendant of policies, which were wrongful or illegal and which cause the constitutional deprivation.  Wanger v. Bonnner, 621 F.2d 675, 679 (5th Cir. 1980).  Theories of vicarious liability, such as respondeat superior cannot support a cause of action under section 1983.  Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983).

In this case, plaintiff states no facts to show that defendants Bickham, Doyle, Moore, or McMullin were involved in the use-of-force incident or Sgt. Turrubiate's conduct thereafter.  Nor does plaintiff state any facts to show that these supervisors affirmatively adopted a policy that was wrongful or illegal and that caused the alleged constitutional deprivation by Barber or Avalos.   Therefore, plaintiff fails to state a cognizable constitutional claim against defendants Bickham, Doyle, Moore, or McMullin.

To the extent that plaintiff claims that Bickham, Doyle, Moore, or McMullin failed to properly supervise Turrubiate, Barber, or Avalos, plaintiff must show the following:  (1) each supervisor failed to supervise the subordinate official; (2) a causal link exists between the failure to supervise and the violation of plaintiff's rights; and (3) the failure to supervise amounts to

deliberate indifference.  *See* <u>Estate of Davis</u>, 406 F.3d 375, 381

(5th Cir. 2005).  Plaintiff's allegations are conclusory; he states

no facts that would meet any of the elements of a failure-to-

supervise claim.  Accordingly, defendants are entitled to summary

judgment on this claim.

### D. Qualified Immunity

Defendants maintain that they did not violate plaintiff's

constitutional rights and invoke the defense of qualified immunity.

(Docket Entry No.53).  "Qualified immunity is 'an entitlement not

to stand trial or face the other burdens of litigation.'" <u>Saucier</u>

<u>v. Katz</u>, 533 U.S. 194, 199-200 (2001) (quoting <u>Mitchell v. Forsyth</u>,

472 U.S. 511, 526 (1985)).  Qualified immunity "provides ample

protection to all but the plainly incompetent or those who

knowingly violate the law." <u>Malley v. Briggs</u>, 475 U.S. 335, 341

(1986).  When a defendant invokes qualified immunity, the burden is

on the plaintiff to demonstrate the inapplicability of the defense.

<u>McClendon v. City of Columbia</u>, 305 F.3d 314, 322 (5th Cir. 2002).

Even so, on summary judgment, the court must look to the evidence

before it in the light most favorable to the plaintiff when

conducting a qualified immunity inquiry.  <u>Id.</u> at 323.

"To rebut the qualified immunity defense, the plaintiff must

show: (1) that he has alleged a violation of a clearly established

constitutional right, and (2) that the defendant's conduct was

objectively unreasonable in light of clearly established law at the

time of the incident." <u>Waltman v. Payne</u>, 535 F.3d 342, 346 (5th

Cir. 2008) (footnote omitted).   The Court has discretion "in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 818 (2009).

### 1. Deliberate Indifference

Plaintiff claims that Sgt. Turrubiate and Officer Barber were deliberately indifferent to his physical needs.   (Docket Entry No.18, pages 3, 4).

Prison officials may be liable under the Eight Amendment if they are deliberately indifferent to the health and safety of the inmates under their charge. Farmer v. Brennan, 511 U.S. 825, 834 (1994).   To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference.   Id. at 837. Deliberate indifference may be inferred from the fact that the risk of harm is obvious. Hope v. Pelzer, 536 U.S. 760, 738-39 (2002).

Plaintiff complains that Sgt. Turrubiate was deliberately indifferent because Turrubiate escorted plaintiff to the disciplinary block without giving plaintiff an opportunity to decontaminate, i.e., to rinse the chemical agent from his body. (Docket Entries No.18, page 4; No.66, pages 4, 5).

The record does not show that immediate decontamination is

required.  The Use-of-Force Plan, attached to plaintiff's response to defendant's summary judgment motion, states that an individual exposed to Oleoresin Capsicum ("OC"), like plaintiff (Docket Entry No.53-1, page 3), should be moved to an uncontaminated area, if necessary, and his contaminated clothes removed.  (Docket Entry No.75, page 21).  Accordingly to plaintiff, Turrubiate had plaintiff strip and immediately moved plaintiff to a new cell.  (Docket Entries No.18, page 4, No.19, page 2).  The Use-of-Force Plan also states that if the primary area of exposure to the OC is the facial area and there is no ongoing exposure in the cell, the inmate may flush in-cell by cupping water and splashing it on his face.  (Id.).  If symptoms persist after facial flushing, the offender may be offered a shower.  (Id.).  Plaintiff indicates that he was advised by a nurse who examined him on the day of the incident that he should rinse the chemical off his body.  (Docket Entry No.19, page 6).  The record also shows that Sgt. Turrubiate "instructed plaintiff on decontamination procedures."  (Docket Entry No.66-1, page 9).

Moreover, plaintiff does not allege, and the record does not show, that plaintiff suffered more than a *de minimis* injury from the chemical spray or that he required medical treatment for any injury. *See* Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997) (finding that bruised and sore ear that did not require medical treatment to be *de minimis* injury); Bradshaw v. Unknown Lieutenant, 48 Fed. Appx. 106 (5th Cir. 2002) (finding *de minimis* injury where inmate sprayed with mace suffered burning eyes and skin for twenty-

four hours, blurred vision, nose and throat irritation, blistering of skin, and rapid heartbeat). Plaintiff states that he experienced a burning sensation to his eyes and his upper body for several days after the incident and that he felt like he was having a heart attack because of high adrenalin levels. (Docket Entry No.19, page 6). He was seen by a nurse on the day of the incident but no treatment, other than rinsing, was prescribed. (Id.).

Likewise, plaintiff does not allege, and the record does not show, that Sgt. Turrubiate was aware of any fact from which he could infer that plaintiff had suffered or could suffer serious harm from the chemical agent if plaintiff did not rinse the substance off his body before he was placed on the disciplinary block. Sgt. Turrubiate's failure to allow for decontamination before placing plaintiff on the disciplinary block, if anything, amounts to negligence. Mere negligence does not constitute a section 1983 cause of action. Wagner v. Bay City, 227 F.3d 316, 324 (5th Cir. 2000) ("the subjective intent to cause harm cannot be inferred from a ... failure to act reasonably").

Nevertheless, to the extent that plaintiff complains that Sgt. Turrubiate failed to follow TDCJ-CID's Use-of-Force Plan, which states that "individuals and the area affected by the chemical agents shall be decontaminated as soon as possible" (Docket Entry No.75, page 21), such omission does not amount to deliberate indifference and does not raise constitutional concerns. Violations of prison regulations, without more, do not state a constitutional violation. See Myers, 97 F.3d at 94. Accordingly,

16

Sgt. Turrubiate is entitled to qualified immunity on this claim.

To the extent that plaintiff claims that Officer Whitney Barber was deliberately indifferent by turning off the electricity to his wing on a hot summer day, he fails to state a cognizable claim against Barber.   (Docket Entry No.18, page 3).   Plaintiff concedes that a faulty breaker shut down the electricity.   (Docket Entry No.19, page 2).   Barber's alleged harassment of inmates who suffered from the electrical outage does not amount to deliberate indifference.   Accordingly, defendant Barber is entitled to qualified immunity on this claim.

### 2. Use of Force

Defendants claim that "the alleged force used on Plaintiff Sandoval did not violate his constitutional rights because the force used was not malicious or sadistic."  (Docket Entry No.53). Plaintiff, however, contends that defendants Avalos and Barber did not act in good faith because he did not assault Avalos and his conduct did not merit such force; he further contends that Avalos and Barber violated TDCJ-CID's Use of Force Plan and that Avalos was disciplined "for use of excessive/unnecessary force-provoked without serious injury."  (Docket Entries No.66, page 7; No.66-1, page 7).

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 5 (1992).   The central question that must be resolved an Eighth Amendment excessive force claim is

"whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7.   Thus, unlike a "conditions of confinement" claim for which an inmate only has to establish that a prison official acted with deliberate indifference, an excessive force claim requires a prisoner to establish that the defendant acted maliciously and sadistically.   Porter v. Nussle, 534 U.S. 516, 528 (2002) (discussing Hudson).   In determining whether an Eighth Amendment excessive force claim has been established, courts are to consider: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the responsible officials; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered. Hudson, 503 U.S. at 7.   In applying the Hudson factors, courts must remember "that prison officials 'may have had to act quickly and decisively.'" Baldwin v. Stalder, 137 F.3d 836, 840 (5th Cir. 1998) (citation omitted).   Moreover, "[t]he amount of force that is constitutionally permissible ... must be judged by the context in which that force is deployed." Id. (citation omitted).

The Fifth Circuit noted that, in Hudson, the Supreme Court "placed primary emphasis on the degree of force employed in relation to the apparent need for it, as distinguished from the extent of the injury suffered." Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir. 1999) (citing Hudson, 503 U.S. at 7).   The Supreme Court has noted that "'the use of excessive physical force against

a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.'" <u>Wilkins v. Gaddy</u>, - U.S. -, 130 S.Ct. 1175, 1176 (2010) (quoting <u>Hudson</u>, 503 U.S. at 4). The Court recognized that when prison officials maliciously and sadistically use force to cause harm, "contemporary standards of decency always are violated . . . whether or not significant injury is evident." <u>Hudson</u>, 503 U.S. at 9.

The absence of serious injury, however, is not irrelevant to Eighth Amendment analysis. <u>Id.</u> at 7. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." <u>Id.</u> quoting <u>Whitley v. Albers</u>, 475 U.S. 312, 321 (1986). The extent of injury may also provide some indication of the amount of force applied. Not "every malevolent touch by a prison guard gives rise to a federal cause of action." <u>Id.</u> at 9. "The Eighth Amendment's prohibition of ''cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." <u>Id.</u> An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. <u>Id.</u> quoting <u>Johnson v. Glick</u>, 481 F.2d 1028, 1033 (2d Cir .1973). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" <u>Deville v. Marcantel</u>, 567 F.3d 156, 167 (5th

Cir. 2009) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)).

In his written statement for the Use of Force Report, dated July 9, 2009, Correctional Officer Justin Avalos stated the following, in pertinent part: Around 2:00 p.m., Avalos was picking up food trays on the E Block. When he opened the tray slot to plaintiff's cell and grabbed the food tray, plaintiff lunged toward him.[3] (Docket Entry No.53-1, page 3). Plaintiff struck Avalos's hand as Avalos attempted to close the slot; plaintiff also screamed profanities and banged the slot up and down violently. (Id.). Avalos ordered plaintiff to remove his hands from the tray slot but plaintiff refused and became angrier. (Id.). Officers Barber and Baxter came to assist him and Avalos again ordered plaintiff to remove his hands. (Id.). Plaintiff refused and Barber ordered Avalos to spray plaintiff. (Id.). Avalos stated that he could not exit the run safely because of the open tray slot and that he feared for his safety, so he administered .7 of an ounce of carry-on-person OC on plaintiff.[4] (Id.). Plaintiff ran to the back of his cell and threw an unknown clear liquid on Avalos's head and upper torso. (Id.). Thereafter, Sgt. Turrubiate arrived and relieved Avalos. (Id.).

Correctional Officer Victoria Baxter stated the following in

_____

[3] In his Offense Report, Avalos stated that he opened the food slot on plaintiff's cell and ordered plaintiff to get to the back of the cell but he refused. (Docket Entry No.66-1, page 17). Avalos stated that plaintiff struck Avalos's hand through the food slot and threw an unknown clear liquid on him. (Docket Entry No.66-1, page 23).

[4] The Maintenance Log entered on July 9, 2009, shows that Avalos discharged 00.07 ounces of carry-on-person OC around 2:10 p.m. (Docket Entry No.53-1).

her Witness Statement dated July 10, 2009:  She was working the E Block with Officer Barber and on-the-job trainee Avalos.  (Docket Entry No.66-1, page 12).  Barber and Avalos were picking up trays and Baxter was at another cell "counseling about the power outage." (Id.).  Barber approached Baxter and told her that plaintiff had "jacked his food slot" and asked if she could gas him.  (Id.). Baxter told Barber to let her call for additional staff.  (Id.). As Baxter made the call, she saw Barber order Avalos to gas plaintiff.  (Id.).  Avalos dispersed a chemical agent into plaintiff's cell.  Additional staff and a supervisor arrived and plaintiff was removed from the cell.  (Id.).

Sgt. David Turrubiate stated the following in his statement dated July 9, 2009:  When Turrubiate responded to a call for additional staff on the E block, Officer Avalos had already administered chemical agents.  (Id., page 9).  Turrubiate instructed Officers Barber and Avalos to resume their normal duties.  (Id.).  He gave a brief narrative on camera and ordered plaintiff to submit to a strip search and hand restraints.  (Id.). Plaintiff complied.  After he was restrained, plaintiff was escorted to P block, where he was examined by Nurse Cross.  (Id.). Cross noted no injuries and plaintiff stated he had no injuries. (Id.).

The Employee/Offender Use of Force Injury Report reflects that plaintiff was examined by Nurse Utley, who noted no injuries. (Docket Entry No.53-1, pages 4-5).  Officer Avalos was examined by Nurse Koron, who noted no injuries.  (Docket Entry No.66-1, page

26).

A fact-finding report dated July 11, 2009, summarizes the same information reported by the officers in their witness statement and notes that Officer "Avalos was assigned to the cell block for on the job training." (Docket Entry No.66-1, page 3). Major L.G. Doyle, the author of the fact-finding report, discussed his analysis of the incident as follows:

> Review of documentation provided by staff along with interviews conducted with staff revealed that Officer Avalos utilized his carry on person chemical agents in a manner inconsistent with agency guidelines. The use of force plan specifically states that if an offender takes control of a food tray slot, no force should be attempted until a video camera and a supervisor are present. Officer Baxter was on the run with a hand held radio at the time and had called for a supervisor. Officer Baxter had also advised officer Avalos and Barber to wait for a supervisor to arrive before using force on the offender. Officer Barber, however, incorrectly advised [O]fficer Avalos to use chemical agents on offender Sandoval.

(Docket Entry No.66-1, page 3). Doyle concluded the following:

> Officer Avalos used force on offender Sandoval prior to a video camera and supervisor arriving when he had ample opportunity [to] step away from the front of the cell and wait for additional staff and a supervisor as is outlined in the use of force plan. Officer Avalos received additional training on the proper use of COP and the use of force plan. He also received an employee disciplinary for use of excessive/unnecessary force provoked without serious injury.

(Docket Entry No.66-1, page 5). Officer Avalos signed a formal letter of instruction on August 25, 2009, which stated the following, in pertinent part:

> On July 9, 2009[,] you used chemical agents on an offender who refused to remove his hands from the food tray slot.
>
> The use of force plan specifically prohibits the use of

> COP (carry on person) chemical agents to regain control
> of the food tray slot.
>
> Officers are required to notify a supervisor who will
> obtain a video camera and the appropriate chemical agents
> to regain control of the food tray slot.
>
> Your actions were a clear violation of policy; therefore
> any future violations of this policy will result in
> formal disciplinary action pursuant to PD-22.

(Docket Entry No.66-1, page 2).

TDCJ-CID's finding that Avalos's actions were excessive and unnecessary under its Use-of-Force Plan is not dispositive of whether Avalos's conduct violated the Eighth Amendment. Violations of prison regulations, without more, do not state a constitutional violation. *See* Myers, 97 F.3d at 94.

In this case, the Hudson factors weigh against plaintiff. The summary judgment evidence does not show that Barber ordered Avalos to "gas" plaintiff to harm or punish plaintiff, or that Avalos sprayed plaintiff with the chemical agent because of some malicious or sadistic intent. The open food slot was a clear violation of security and had to be closed. *Cf.* Poe v. Texas Dept. of Criminal Justice, 306 Fed. Appx. 866 (5th Cir. 2009); Magana v. Strickland, Civil Action No.H-08-2899, 2010 WL 3660919 (S.D. Tex. Sept. 20, 2010). Plaintiff's pleadings and exhibits reflect that plaintiff would not relinquish control the food slot in his cell until his demands were met.[5] Regardless of whether plaintiff hit Avalos's

---

[5] Plaintiff states that he held his food tray stiff in the food slot while defendants ignored him. (Docket Entry No.66, page 6). An inmate witness indicated in his written statement that plaintiff held his tray on the food slot and said that he was keeping it there until he talked to a sergeant. (Docket Entry No.66-1, page 20). Officer Barber stated that she observed plaintiff refusing to let the officer close the food slot because he wanted a ranking

hand or merely "jacked" the food slot, the record is undisputed that plaintiff disrupted the orderly flow of prison business on the wing.   Consequently, the use of force could plausibly have been thought necessary.

The undisputed record also shows that Officer Avalos, who was under Barber's supervision as a trainee, sprayed plaintiff with less than one ounce of the chemical agent when Barber ordered him to do so.   Barber, who had requested permission to "gas" plaintiff to force compliance, violated an order to wait for assistance. Barber's and Avalos's actions were immediate; Avalos sprayed plaintiff while Officer Baxter was in the process of requesting assistance.   Plaintiff suffered *de minimis* injuries that did not require medical treatment.

The Court does not condone Officer Barber's and Officer Avalos's noncompliance with the procedures for the use of chemical agents outlined in TDCJ-CID's Use-of-Force Plan.   Nevertheless, based on this record, the Court finds that defendants acted in good faith to restore order and did not violate the Eighth Amendment's prohibition against cruel and unusual punishment by their use of chemical agents.   Plaintiff has failed to raise an issue of material fact that would overcome defendants' defense of qualified immunity. Accordingly, defendants are entitled to summary judgment on this ground.

---

officer.  (Id., page 22).

## E. Neglect

Plaintiff alleges that defendants neglected him on July 9, 2009, but he states no facts in support of such claim. (Docket Entry No.18, page 6). Nevertheless, defendants have framed this allegation as a state law claim of negligence and assert the defense of official immunity. (Docket Entry No.53, pages 14-18). Plaintiff does not address the issue of neglect in his motion for summary judgment or in his response to defendants' motion for summary judgment. (Docket Entries No.66, No.75). Because all of plaintiff's federal claims are subject to dismissal, the Court declines to exercise supplemental jurisdiction over plaintiff's conclusory state law claim of "neglect."   See 28 U.S.C. § 1367(c)(3).

## III. CONCLUSION

Based on the foregoing, the Court ORDERS the following:

1.   Plaintiff's motion for "Preliminary Injunction Relief" (Docket Entry No.43) is DENIED. Plaintiff's claim that he has not received indigent supplies is without merit and is now moot.

2.   Plaintiff's motion for the appointment of counsel (Docket Entry No.63) is DENIED for the reasons set forth in the Court's Order of June 17, 2010. (Docket Entry No.34).

3.   Plaintiff's motion to amend his complaint to seek relief from defendants in their individual capacities alone is DENIED. (Docket Entry No.64).

4.   Plaintiff's motion for summary judgment (Docket Entry No.66) is DENIED.

5.   Defendants' motion for summary judgment (Docket Entry No.53) is GRANTED.

25

6.  All claims against defendants Phillip Bickham, L.G.
    Doyle, Rocky Moore, Virgil McMullin, Whitney
    Barber, David Turrubiate, and Justin Avalos are
    DENIED.  This civil rights action is DISMISSED WITH
    PREJUDICE.

7.  All other pending motions, if any, are DENIED.

    It is so ORDERED.

Signed at Houston, Texas, on _____February 14_____, 2011.


                        _____
                        EWING WERLEIN, JR.
                        UNITED STATES DISTRICT JUDGE